.Judge Marshall
delivered the opinion of the Court which was suspe ndod until the present time when the suspension was removed.
In 1839, Basye filed a bill against Beards representatives as non residents, attaching certain debts due to ■Beard’s estate as means of satisfying a bond of indemnity executed by Beard to indemnify him from all loss ■damage, expense, trouble, &c., which might accrue from any subsequent purchase of slaves by Basye from Joshua McDonald, &c., and alleging that Mrs. M. McDonald had brought suits for six slaves purchased under said indemnity at the price of about $1900, that he Fad paid^TOO of the price, and had executed three *582 notes for the residue of the price, and had incurred great expense and trouble in the defense of the said suits, in one of which ia an amended bill he states that jfudgme»i had been obtained for the slaves or their alternate value assessed at $1900, which he says he has satisfied*Is©prays that the $700which he had paid, and his expenses*i§pe»3 be decreed to him against Beard's executors,and that the judgments which had been obtained against him for ibe residue of the purchase mo-iiev be perpetually enjoined.
The answer of Beard’s executor relied mainly on the ground that the judgment in detinue had been obtained by -compromise in fraud of Beard, and that Mrs. McDonald was not entitled to recover. And Basye having set out her title in an amended bill, the principal controversy was upon the effect of the judgment in detinue for the.slaves and on Mrs. McDonald’s right to recover •them. On the hearing of that case a decree was rendered ia conformity with the prayer of the bill, perpetually enjoining the judgments for the residue of the purchase money, and decreeing that Beard’s executors should pay to Basye the $700 with interest from the 24th -of May, 1842, the date of the judgment in detinue, and of its satisfaction as appeared, also $200, a fee paid by Basye in defense of that action; and $17, his legal eosts therein, to he credited by $399 70, made on the attachment and paid over to Basye. This decree was affirmed by this Court in October, 1816, and the opinion then -rendered (7 B. Monroe, 133,) is referred to for a more detailed statement of the pleadings and diets and of the principals involved and decided. All of which, however, so far as they are material to the present case, will be found in pages 133, 4, and 5, at the commencement, and in pages 149, 50, and 51, at the close of the opinion. It will be seen from that opinion, and appears from the record, that the action against Basye was for five only of the slaves, the sixth (Jacob,) having been sued for in a separate action against Basye’s vendee — that the verdict against Basye- *583 was a compromise verdict, particularly as to the value of the slaves, and the Court assumed what we are now satisfied is true, that although only five of the slaves were sued for in that action, the assessed value was intended to include also the value of the sixth, the action for which was short!}' afterwards dismissed. The object was to settle the controversy with Mrs, McDonald as to all of the slaves, and to lay a basis for a full re* covery on the bond of Beard. The verdict therefore was not considered as evidence of anything against Beard except the fact of eviction. But this Court being -of opinion upon'the evidence adduced, that Mrs, McDonald had the paramount tille, and was entitled to re-cover — that Bnsye had a right to quiet her title at the expense of Beard, at least 'to tiie exlcnt of the original contract price, and that neither McDonald nor his representatives holding the judgments for the unpaid purchase price of the slaves, had any equity either against Bayse to enforce the price, or against Beard’s executors to throw the loss on him, considered that the equity of the case was fully met by enjoining the collection of the price unpaid, and restoring the money paid, which included in principle the attorney’s fee and the costs; And the whole decree was affirmed.
The rase nov i'esented forde-iision. as clahn-11 by the bill.
In April. 1847, after this affirmance, Beard’s exeeb tors filed the present bill, in which they refer briefly to the nature and proceedings of the former suit and the decree therein, and reiterating‘the charge of fraud in the judgment in the action of detinue, and charging fraud also in procuring the decree for the $200 alleged to have been paid as a fee, they charge in effect that instead of paying or being bound to pay $1900 in satisfaction of the judgment in detinue, Basye had in fact paid or was to pay but $1050, and had procured or quieted Mrs. McDonald’s claim, and by the compromise satisfied the judgment for that sum, and that this fact was not discovered until after the former decree, which fact he charges shews that the decree was rendered for $850 too much, and that this is ground for *584 enjoining $850 of the former decree. The bill also se*s forth a statement of the notes due for the unpaid price of the slaves, and of the interest thereon, amounting altogether, at the date of the judgment in detinue to about $1568, and insisting that Basye only lost by the judgment the sum of $1050, of which $399,70 were paid by the attachments, reducing the loss to $650,30, contends that this last sum should have been satisfied by applying it as a credit upon the unpaid purchase money. And prays a decree for the residue together with the costs on the judgments against Bayse, and that his decree for the $700 and the $200, should be perpetually enjoined.
The defence relied upon in the answer.
Basye relied on the former decree as a bar to this bill, to which he also demurred, and in his answer he refers to and adopts his former answer to the cross bill, and not admitting the alleged discovery to have been made since the rendition of the decree he admits that after the judgment in detinue it was agreed between him and the agent of the plaintiff, that it might be satisfied by the payment of $1050, because Billy, the most valuable of the slaves recovered, had run away from Briscoe, defendants vendee, and returned to Mrs. McDonald who still had him in possession, and was to take the risk of her title — that $800, his value as assessed by the jury, was allowed on this account, and the other $50 on account of his (Basye’s) trouble, &c. He justifies the compromise and denies all fraud, &c., and claims that if the decree is opened, he is entitled to back interest on the $700. It appeal's by the further pleadings and proof in the case, that Billy and Jacob were purchased together-in February 1833, and conveyed by the same bill of sale at the price of $800, of which $450 was the price of Billy, and $350 the price of Jacob — that in March 1834, Basye sold Billy , to Briscoe of Mississippi, for $550, and that long .before the rendition of the judgment in detinue, it was stated by the agent of Mrs. McDonald, and by her son, that Billy had run off from Bi;iscoe, and was in her posses *585 sion. And the Witness understood that this was the ground of (he deduction from the $1900, the amount of the verdict in which Billy's value was assessed at $800.
Tliough a bill may not be called a bill of review, yet if it describe the case» folly and rely upon an important fact discovered since the decree and that there was no negligence in npt discovering it, and which fadt should produce a different decree, and it is sought to correct the former dp, cree and it h»s been so treated by the Circuit Court, it should be entertained a? a bill of review in this Qtjurt, though the is*, eori be not ax-pressly made part of it.
Upon the hearing, the Circuit Court being of opinion that all claims set up in the present bill,- except such as resulted directly from the fact discovered in relation to the sum paid in satisfaction of the judgment in detinue, were barred by the former decree and affirmance,- decreed that Basye should pay to Beard’s executor the sum of $1231, composed of $850 with the interest thereon from the date of the judgment in' detinue to the date of the decree with interest on said $1231, until paid. Basye appealed from this deciee,- alleging that the Court erred, 1st, in granting any relief to the complainant; and 2d, that if the former decree is opened, it was erroneous not to have decreed interest on the $700 decreed to him, from the time of its payment. And Beard’s executor assigns for cross error that the decree should have been for a much larger sum in his favor.
In support of the first error assigned, it is contended that this bill is not a bill of review, but merely a' bill re-litigating the same matter involved in the former suit, and therefore barred by the former decree. But although the bill is not called a bill of review, yet so far as it alleges and relies on a fact discovered since the forifter decree, not alleged, ánd which could not have been alleged in the former suit,- because withotit negligence or default it was not known,- and Which affects the equitable rights of the- parties, and would hate produced a different decree if known and shown in the former record, and so faras on the ground of such newly discovered fact it seeks to change and correct the former decree, it is in substance and effect, a bill of review,- and should be entertained as such, if the fact be of the character above described, and there has been no negligence or default, and if the former suit and decreé, be sufficiently brought before the Court.
*586 (This bill seems to have been regarded as a bill of review by the defendant, who, in his plea, after stating that the same matters had been litigated between the same parties, and determined by the Circuit Court and the Court of Appeals, concludes by saying that no sufficient cause is shown in said bill of review why the said decree should be reviewed. And although the bill does not, in terms, make the record of the former suit an exhibit, yet it gives such a history of the proceedings and decree in that suit, and suggests such errors in the decree, and prays such relief as to leave no doubt that the record was intended to be brought before the Court, and to constitute, together with the matters set up in this bill, the ground of the relief sought. And such reference is made to different parts of that record by each of the parties in the present suit, as shows that each considered the former record remaining in the same Court, as being a part of this case. The complainant, for instance, in his original bill, after stating in general terms the object of Basye’s former bill, says,said bill and the indemnifying bond, are referred to as a better specification of the object of the bill.” But the said former bill is not copied as an exhibit, and is found only in the former record. So Basye in his answer in this case says, “ that he adopts his answer heretofore filed in the suit referred to in complainant’s bill, with all its denials, allegations and aver-ments, and makes it part of this answer.” But he does not file a copy of it with his answer. From which fact, as well as from the manner in which he speaks of.the suit referred to by the complainant, it is evident that he considered the former suit, and record as a part of this suit and record. In fact they constituted the very basis of the present bill, the object of which was to obtain relief against the' former decree, and by showing from the former record and the new fact or facts now disclosed that the former decree was inequitable and erroneous. And it is evident, from the reasoning of the decree, that the Court as well as the parties *587 considered the former reeord as a part of this. The omission to make that record, by express reference, a part of this bill, was doubtless an inadvertance not observed by either party, or by the Circuit Court, and as it was in fact in the same Court, and evidently considered by both parties, and by the Court, as a part of this case, and as being before them as such, we feel bound also to consider it as a part of the case, just’ as if it had been expressly made so.)
Tlie established rule’in chancery proceeding, is that though the specific prayer of the bill be inappropriate, yet the Court may and will, upon, the general pray er, grant such re lief as the allegations and proof required. And if the el»> ject of the bill is to injoin a decree in whole or in part, or for repayment of money under a de-oree, it is in effect a bill in the nature of a bill of review, though it may not in terms pray for a review.
*587 This bill does not, in terms, pray that the former decree may be reviewed, or set aside, or corrected. But it proposes to show that it was erroneous and inequitable, both as to the money decreed to be paid back to Basye, and as to the injunction against collecting the unpaid purchase money, and on this ground it asks not only for the specific relief deemed appropriate upon the establishment of these errors, but also for such relief as may be equitable. Assuming that it alleges a proper ground for questioning and changing or reversing the decree in all or any of its parts, and for ultimate relief in the matter previously litigated and de* creed, then it contains the substance of a bill of review, and authorizes the Court to grant the appropriate relief, unless an express prayer for the review of the former decree, or for setting it aside, be necessary to-authorise the Court to grant such relief. But the established principle is, that although the specific prayer be inappropriate, the Court may and will, upon the general prayer, grant such relief as the allegations and proof require.
It is said that a bill of review should terminate in' -opening or setting aside the former decree, which’ would leave the case, upon the original bill, undisposed' of, and still open for decree. But if upon the case presented, the Court has authority to set aside the original decree, it may surely disregard it; and in fact a decree rendered on the bill of review, inconsistent with the former decree, and restraining or defeating its operation, does, in effect, so far reverse it or set it *588 aside. The last decree, if the .Court has power to render it and to grant the relief which it asks for, must supercede a former inconsistent decree, which denies such relief. And although in strictness it may be proper ¡that the first decree should be formally set aside, -where relief inconsistent with it is to be granted, it must still be within the power .of the Court to determine according to the nature of the case, and the attitude .of the parties whether the ultimate relief to which the party may be entitled shall be granted on the bill .of review, or in the original suit and by reversing the former decree and making a new one.
Suppose a party, after a decree against him for money discovers a.fact which, although it existed prior to the decree, was wholly unknown and inaccessible to him, and which shows that the .complainant was not entitled to the money, and -that ,«o such decree should have been rendered. Or suppose that he makes the discovery after the money is paid and the decree satisfied; in .either case he would undoubtedly be entitled to protection against payment ,or to re-payment.
A perpetual injunction .against a decree for money is equivalent to a reversal .0if the first decree and a dismissal of the bill on which it was founded, or if the money has been paid, a direct decree for its re-payment is equivalent to a reversal of ¿he original demand and a decree in that suit for a restoration of the money. And as such summary relief granted upon a bill complaining -of the former decree, alleging errors in it, and showing a right to review ..and reverse, would necessarily imply that the decree had been reviewed, and the objections of some of them allowed, so the prayer for such summary relief must imply a prayer that the decree be reviewed upon the errors and objections alleged. The omission to pray for a review which is only a mode of coming at the final relief caqnot, therefore, be a fatal defect, and especially when the bill not only .furnishes the means of making a review, and prays fora relief which implies a review, and is equivalent *589 to a reversal of the former decree, but also prays for all equitable relief. To say that such a bill is barred by the very decree of which it complains, because it is not a bill of review, would be to sacrifice the substance of the rule to a mere name, and to defeat the justice and equity of the case by a mere formal nicety. We are satisfied, therefore, that a bill showing grounds for a review and reversal of the former decree, but merely praying for an injunction against it, and for general relief, or for a restoration of money paid under it, and for general relief, is essentially a bill of review, to be subject to the same tests as to the sufficiency of its allegations, and entitled to the same privileges and consequences.
The chancellor will# not sustain a bill of review for the discovery of a foot which mi§hl have been and should have been discovered before the decision of the case and which the point involved was decided by the Circuit Court and affirmed .by the Court of Ap. peals.
We proceed, then, to consider the sufficiency of the present bill with respect to the errors or objections on account of which relief is prayed. And we concur with the Circuit Court in the opinion, that as to so much of the former decree as enjoins the unpaid purchase money, the relief now prayed for is precluded by the affirmance in this Court. Upon this part of the case the bill, in effect, claims that upon facts which either were, or ought to have been, before the Court in the original case, the decree is unjust and erroneous.
No^new fact, and certainly no Vnewly discovered fact, respecting the amount of the original purchase money, and its interest remainining unpaid, is[alleged or proved. There is, it is ture, a specific statement now made in order to show that the unpaid principle and interest due at the date of the judgment in deti-nue, was nearly equal to the $1900 alleged to have been paid or payable on that judgment. But this fact was certainly within the knowledge,~or at least within the power of the complainants; and if the record did not furnish precise information on the subject, it at least showed the principal sums due,'and authorized the inference that a considerable amount of interest had accrued. If it did not show this much, and if it did not contain, the means of precise knowledge, the omis* *590 sion was the fault of the present complainants, and is wholly unaccounted for. If it did. contain sufficient means of knowledge to authorize the fact to be considered, and if the fact should have produced a different decree, the error of the Circuit Court was affirmed by this Court, and the affirmance isa bar to a bill of review, and to any relief on this ground. In affirming the former decree, this Court said:
“If, therefore, Basye had paid the whole price of the purchase from McDonald, it would have been proper to have decreed a restoration of the entire sum (then supposed to be $1,900) agreed to be paid to Mrs. McDonald, and secured by herjudgment, of which satisfaction was acknowledged. But as part of the original purchase money remains unpaid, and the notes for it have never been assigned for value, but are in the hands of the administrator of McDonald’s legatee, .(who is the same person as the executor of Beard,) the equity of the case is answered by cancelling these notes, or enjoining their collection, and restoring the money paid. The legatee of McDonald who sold and either impliedly or expressly warranted the slaves, has no equity either against Basye to enforce these notes, or against Beard to throw the loss on him or his •estate.”
The Court evidently regarded the $1900 paid or payable under the judgment in detinue, as equivalent, so far as the equity of the case was concerned, to the entire price agreed to be paid in the original purchase of the slaves, and that there was no right to recover the unpaid purchase money, whatever it was. Upon this principle, the decree which enjoined the unpaid purchase money, and decreed back that which had been paid, was affirmed. Upon the same principle, if only $1000 had been paid or payable under the judgment, and Mrs. McDonald’s title thereby secured — the only ' effect must have been to diminish or extinguish the claim against Beard’s executor for that part of the price which had been paid. Of course the subsequent *591 discovery of the fact that only $1050 instead of $1900, was paid under the judgment, can have no other effect, without violating the principle of the affirmance.— Whether if the attention of this Court had been called to the precise amount due on the original purchase, it might have fixed upon a different criterion for estimating the amount recoverable by Basye, is not material. The mistake in the decree of affirmance, whether of a principle of equity, or of a fact which was or should have been sufficiently presented in the former case, is conclusive in a bill of review, as well upon the Court as upon the parties.
Upon the hearing of a bill ot review it clearly-appearing that-plaintiff in tie first suit had obtained a decree for a greater sum, than he was entitled io, and the-facts showing, that the decree to that ex tent,, should not have-been rendered' rested in the knowledge of the complainant, and not of the de f e ndant’s know ledge.— Held that the Court should grant relief by injoining the ex cess perpetually"
But again, the principle that neither McDonaid nor his legatee had any right to recover the balance of the purchase money, is certainly unaffected by its amount. And alihough under that principle Basye has made a most advantageous bargain, and instead of losing, might have been the gainer by the judgment in detinue, even if he had paid the $1900 without recovering anything from Beard, and although he is certainly the gainer when he paid only $1000 instead of $1900, still this reduction gives no right to McDonald’s representatives, but ean only operate" upon Basye’s recovery against Beard’s executor.
The bill sufficiently alleges the discovery of the fact, that only $1050 was to be paid on the judgment in de-tinue. Andas the record showed this to be the sum’ recovered, and Basye claimed it in his pleading as paid, without disclosing the fact that by secret arrangement he was to pay the smaller sum, not only is the complainant’s ignorance of the fact sufficiently accounted' for, but it is evident that in obtaining his decree for the-larger amount, Basye taking advantage, of the credit due to the record, and to his own averment imposed-upon the justice of the Court, and upon the confidence-of his adversary. It sufficiently appears, too, that the-discovery was not made in time to be introduced inlo the former record. And as to the materiality of the-fact, and the effect which it should have had, and must. *592 now have, upon the equitable rights of the parties, these are too obvious to require argument or illustration.
The $SoO deducted from the amount of the judgment in detinue is less than the amount of the sums decreed against Beard’s executor, but is more than the sums so decreed after deducting the sum of $399.70 made by the attachment in the first suit. The equity of the case as presented by the present bill requires that this sum of $850, supposed to have been lost by Basye in the judgment for the value of the slaves, should be considered as a part of the sum decreed against Beard’s executor on account of the supposed loss, and of his costs and expenses in that action. Had the fact now disclosed been a part of the original case before decree, it should, according to the principles of that decree and of the affirmance, have precluded any decree in favor of Basye, for the $700, formerly paid by him, by setting off the one sum against the other. And the sum of $150, which would have remained, should have been applied as a satisfaction of the costs of the de-fence in the action of detinue amounting to $17, and then to the extinguishment of one hundred and thirty-three dollars of the $200 paid as a fee in that case, leaving of all the claims of Basye against Beard’s executor, the sum of $67, only, to be satisfied out of the proceeds of the attachment and the residue of said proceeds amounting to $332,70, belonged to Beard’h executor, and should not have been decreed against him.
If then Basye had no equity to the extent of the' $850, or any part of it, still as he was not bound to pay the unpaid purchase money, Beard’s executor cannot on the ground of the discovered fact as to the $S50, be entitled to recover anything more than Basye has inequitably received under the decree. As to so much as was not received, a perpetual injunction would'have been the appropriate relief. The bill does not allege that the amount formerly decreed to Basye had been paid. But as there has been no intimation that it has *593 not been since paid, and as the sum now decreed against Basye, is just about equal to the sums formerly decreed to him with interest, and in any event justice can be done by a set off on motion ; and as the property decreed on the ground of non payment of the former decree has not been questioned even in argument, and is not reached by any assignment of error, we do not feel bound if indeed we are authorized to reverse the present decree on th e ground that it decrees payment of th e whole sum against Bayse, when it does not appear and is not alleged that he had received it. This error goes only to the mode of relief and would not justify a dismissal of the bill, which is claimed by the first error assigned. The second error assigned clearly does not reach this question. And it is only necessary to say with respect to it that in deciding that Basye was not entitled to the $700, formerly decreed even with interest from the date of the judgment in detinue, we of course deny his claim to any previous interest on that sum. The cross error has already been in effect disposed of.
The only remaining question then is, whether the defence relied on by Basye as justifying and supporting his claim for the $850 deducted from the amount of the verdict in detinue, entitles him to the whole or any part of that sum, or should produce any modification of the decree rendered against him in this case. There seems to be no doubt that $800 of the $850 was deducted on account of the assessed value of Billy, which was agreed by the parties to the action and inserted in the verdict by them. And although there is no evidence that Billy was, and had long been, in possession of the plaintiff, except by proving the statement of her agents, to her counsel, and to Basye, there seems to b® but little doubt that this fact, as understood by them, was the basis of the arrangement, and the fact itself is probably true. But, if true, the plaintiff had no right to recover Billy, and certainly no right to his value; and considering that the verdict was made up by agreement of the parties, Beard’s executor being ignorant *594 of it, has a right to regard it as it substantially was, as a recovery only of the other slaves and their assessed value, which was eleven hundred dollars.
Hardin, and Riley, Maorehead 4* Reed for appellant, Grigsby for appellee.
The $50 allowed (strangely enough) to Basye as some compensation for his trouble, &c., in defending the action, and resisting the plaintiff’s claim, gave him no right to demand that sum against Beard’s executor— and especially when without disclosing this allowance he claimed and obtained a decree for such loss and expenses as he could prove.
But it is said that Basre is still liable to Briscoe for the price of Billy, viz: $550 which should have been provided, for in this decree, at least to the extent of $450. There is no evidence, however, except that which, as to Beard’s executor, is hearsay merely, that Briscoe has •ever lost Billy even by his running away, and there is no .evidence whatever that there has been any judgment against him for Billy, either in an action by him or in one against him, nor is it shown that Bayse can, in any manner be subjected to a loss by reason of his sale to Briscoe, from whom he received more for him than he gave, nor that any suit has been brought against him os that account. It is to be recollected that Beard bouná himself not to warrant, but to indemnify against less. There has certainly been no loss to Basye, as yet, on account of the purchase and sale of Billy; and we do not perceive that he has made out a case requiring at the hands of the Chancellor any other indemnity than that afforded by the original bond of Beard. Whether by his own acts he has lost his recourse upon that bond, it will be time enough to determine when he seeks it upon a case calling for it.
Wherefore the decreeis affirmed.